Mr. Chief Justice Shahkev
delivered the opinion of thé court.
This case is a second time before us on exceptions taken to the ruling out of part of the evidence, and it is said that the features of the case as now presented are essentially different from those which it exhibited on the first trial. On the former trial, the rule by which the damages should be estimated constituted the prominent question. It was then satisfactorily settled, and is now acquiesced in by the counsel. But the criterion or basis by which the damage is to be ascertained under that rale is now the main question to be determined.
When the cotton arrived in New Orleans from the wreck of the steamboat, two cotton brokers were called in to ascertain the extent of damage, which they did by fixing the depreciation at a per centum damage on the value of the cotton, thus ascertaining the loss on each particular lot at a given per cent. For example, the lot marked M. N. Brandon had been damaged thirty per cent., and so of the other lots.. After this survey or valuation of the brokers, the cotton was sold at auction for cash, and the question is, which shall be taken as the criterion of damage, the valuation of the brokers, or the auction sales.
On the trial, the plaintiffs introduced the valuation of the brokers, and it- is said, that it was introduced as preliminary proof merely, or rather to show that preliminary proof had been furnished to the underwriters, according to the stipulation in the policy. They also offered to introduce the account of sales at *749 auction, and this was objected to under the former decision of this court, and it is contended that the, plaintiffs were estopped from ■doing so by the first evidence introduced, the valuation of the brokers; whilst on the other hand, the plaintiffs’ counsel insist, that they should have been permitted to show greater damage than'*had been assessed by the brokers, and that they were not precluded from doing so by the first proof offered by them. It follows as a necessary consequence, that, whichever mode is the legal one of ascertaining the damage, must of course exclude the other from being conclusive.
In our former decision, we adopted the appraisement or valuation of the brokers as furnishing the best criterion of damage. It was recommended to us by its supposed fairness, its simplicity and certainty, and we were not then informed of its true object. It now appears that this course is always pursued' with a view to ascertain whether the damage exceeds ten per cent., as a mere preliminary measure, and that it is never .taken with a view of giving a criterion by which to ascertain the damage. It further appears that it is the general custom, after such appraisement to sell at auction, and that the .sale so made is "considered in the mercantile community as furnishing the proper and legal criterion for ascertaining the damage, and of the value of the damaged article. If we recollect aright, these facts were not shown on the former trial, and they constitute the material difference between the present and the former case; and although with no additional lights before us we might be inclined to adhere to our former opinion, yet we feel constrained under present circumstances to yield, and adopt that mode which is proved to be the customary one for fixing the criterion of damages. This question is so peculiarly mercantile in its character, that it cannot be better decided than by. submitting it to the custom of merchants. It is a question similar to that which Lord M.ansfield in the case of Lewis v. Rucker, considered a proper one to be decided by merchants, ■ because they were acquainted with the custom. Whatever may be our aversion in general to adopting customs, yet in this instance, the custom is proved to be general in New Orleans, and it is to be presumed that the parties contracted with a view to it. Indeed for aught that appears, it may be a universal custom, and if so, we should certainly do wrong to reject it. *750 We of course are not bound to adopt all the new fashioned customs of merchants, more than the customs of other classes. But where a contract in all its bearings, in its execution and fulfilment, is strictly a mercantile contract, an implied assent to customs which govern in similar cases may be presumed. This is a question which falls peculiarly within the influence of custom. The law requires a fact to be ascertained, but has not, that I am aware of, provided, any particular mode of doing it. That mode of ascertainment may be left to custom to establish. The appraisement does not preclude the plaintiff from the benefit of the proof of the sale at auction, because it was offered to the defendants as preliminary proof of loss sixty days before suit brought. It is true, it was so offered, but it now appears that the account of sales at auction was also offered at the same time for the same purpose. In this respect, therefore, they both stand upon the same footing.
Under this view of the subject, we think -the testimony should have been permitted to go to the jury, with liberty, if they found the custom fully established, to be governed by it. And it follows that all the testimony which went ,to establish the sale and the manner of making it, should have been received. And as a further consequence, the testimony in regard to undamaged cotton at the port of delivery at the time this arrived, was also proper ; because the price' of the undamaged article must be ascertained in order to apply the rule given in our first opinion for ascertaining the damage. The value of the damaged cotton is known, but the proportion to be paid cannot be known unless the price of the undamaged article be also given.
Under our present view of the case, the questions propounded to Ferriday and ruled out, may become material. It was competent by him to establish the fairness of the sale, or to explain the manner and object of taking the appraisement. It was competent also for him to state whether, from the facts which had subsequently transpired, the damage was greater than at first supposed. It was also proper to ask him as to the custom of merchants in relation to selling damaged property, and the object of such sales; this he had in substance previously stated. But it was surely not proper to discredit by the witness, the appraisement, which they had previously introduced as evidence.
The judgment must be reversed and a venire de novo awarded.